**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WISCONSIN**

In re:

**CRANBERRY GROWERS COOPERATIVE, (d/b/a CranGrow)** Case No. 17-13318-cjf

Debtor. Chapter 11

**FIRST DAY MOTION FOR ENTRY OF INTERIM ORDER (I) AUTHORIZING POST-PETITION DEBTOR-IN-POSSESSION FINANCING, AND AS PART OF THE MOTION, GRANTING SUPER-PRIORITY CLAIMS TO THE DIP LENDER, (II) AUTHORIZING INTERIM AND FINAL APPROVAL OF THE USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDER, AND (IV) SCHEDULING AN INTERIM HEARING ON AN EMERGENCY BASIS, AND A FINAL HEARING ON THE MOTION**

Cranberry Growers Cooperative, debtor and debtor in possession in the above-captioned case ("**CranGrow**" or the "**Debtor**"), hereby moves for entry of interim and final orders to approve (i) Post-Petition Debtor-in-Possession financing from CoBank ACB ("**CoBank**" or the "**Lender**") pursuant to § 364, title 11 of the United States Code (the "**Bankruptcy Code**"); (ii) use of cash collateral of CoBank arising from a pre-petition secured loan to the Debtor pursuant to § 363 (C)(2)(B) and (3) of the Bankruptcy Code and Fed. R. Bankr. Pro. Rule 4001(b) and (d) pursuant to the budget attached hereto as **Exhibit "A"** (the "**Budget**") and (iii) offering adequate protection to CoBank. Further, the Debtor requests that the Court set an emergency, expedited hearing on the Motion on or before September 27, 2017, and set any final hearing that may be necessary and appropriate.

In support of this Motion, the Debtor states as follows:

## JURISDICTION AND VENUE

1. The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 25, 2017 (the "Petition Date") in this Court. The Debtor

continues to operate its business and manage its affairs as debtor-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the order of reference in this district issued pursuant to 28 U.S.C. § 157(a). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. These matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (D), and (M) as matters regarding administration of the estates, obtaining credit, and the use of cash collateral.

## MATERIAL SUMMARY OF THE PROPOSED FINANCING ARRANGMENT[1]

| | |
|---|---|
| **Borrower:** | Cranberry Growers Cooperative ("**Debtor**") |
| **Lender:** | CoBank, ACB ("**CoBank**") |
| **Guarantors:** | Daniel Rezin pursuant to that certain Guarantee Agreement dated February 11, 2016 secured by that certain Irrevocable Letter of Credit dated January 19, 2016 in favor of CoBank; Fredrick & Linda Prehn pursuant to that certain Guarantee Agreement dated February 11, 2016 secured by that certain Irrevocable Letter of Credit dated January 18, 2016 in favor of CoBank; Gary Jensen pursuant to that certain Guarantee Agreement dated February 11, 2016 secured by that certain Irrevocable Letter of Credit dated January 18, 2016 in favor of CoBank; James Van Wychen pursuant to that certain Guarantee Agreement dated February 11, 2017 secured by that certain Irrevocable Letter of Credit dated January 18, 2016 in favor of CoBank; Kurt Rutlin pursuant to that certain Guarantee Agreement dated February 11, 2017 secured by that certain Irrevocable Letter of Credit dated January 19, 2016 in favor of CoBank; Linda Pionkowski pursuant to that certain Guarantee Agreement dated February 11, 2017 secured by that certain Irrevocable Letter of Credit dated January 18, 2016 in favor of CoBank; Raymond Hableman pursuant to that certain Guarantee Agreement dated February 11, 2017 secured by that certain Irrevocable Letter of Credit dated January 19, 2016 in favor of CoBank;. Vicki Nemitz pursuant to that certain Guarantee Agreement dated February 11, 2017 secured by that certain Irrevocable Letter of Credit dated January 19, 2016 in favor of CoBank. |

[1] Hereinafter referred to as the "Summary".

**Pre-Petition Indebtedness:**

"**Pre-Petition Indebtedness**" means the following: (a) all pre-petition obligations of Debtor to CoBank (including without limitation all principal, interest, default interest, fees, costs and expenses) under the Credit Agreement dated as of February 11, 2016 (as amended by the Amendment to Credit Agreement dated as of February 15, 2017, the Amendment to Credit Agreement dated as of June 2, 2017, and the Forbearance Agreement and Third Amendment to Credit Agreement dated as of August 17, 2017, and as further amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), the Amended and Restated Monitored Revolving Credit Promissory Note numbered 00100914S01-E dated as of September 22, 2017 (as amended, restated, supplemented or otherwise modified from time to time, the "**Revolving Note**"), and the Amended and Restated Multiple Advance Term Promissory Note numbered 00100914T01-A dated as of February 15, 2017 (as amended, restated, supplemented or otherwise modified from time to time, the "**Term Note**," and together with the Revolving Note, collectively, the "**Promissory Notes**"); the Credit Agreement and the Promissory Notes, together with any and all related loan and security documents and all other instruments, agreements and other documents delivered in connection therewith, are referred to collectively as the "**Loan Documents**"); and (b) all other indebtedness, liabilities and obligations of the Debtor to CoBank. The Debtor shall acknowledge and agree that all of the foregoing indebtedness, liabilities and obligations are due and owing to CoBank without offset, defense or counterclaim, and are secured by first-priority perfected liens in the pre-petition collateral, subject only to valid, perfected, prior, non-avoidable liens to the extent permitted under Section 6.3 of the Credit Agreement.

**DIP Facility:**

The DIP facility will be comprised of a committed, secured revolving line of credit in an aggregate principal amount as of any day (the "**DIP Commitment Amount**") equal to the lesser of:

(a) $13.25 million (the "**Maximum Commitment Amount**"); or

(b) the Borrowing Base as of such day (the "**Borrowing Base Commitment Amount**");

The DIP Facility will commence on the date the interim order is entered by the Bankruptcy Court approving the terms of the DIP Facility and terminating on the Maturity Date (as defined below). All advances under the DIP Facility (the "**DIP Advances**") and all other post-petition indebtedness owing to CoBank shall be entitled to super-priority administrative expense status.

**Maximum Available Amount:**

As of any day, an amount equal to:

(a) the DIP Commitment Amount as of such day; minus

(b) the aggregate outstanding principal balance of all DIP Advances as of such day; minus

(c) any then outstanding Pre-Petition Indebtedness owing in respect of the Revolving Note.

| | |
|---|---|
| **Borrowing Base:** | The Borrowing Base will be as set forth in the Revolving Note and Loan Documents with respect to assets of the Debtor, provided, however, that CoBank may (among other things) establish additional standards of eligibility, adjust reserves, and adjust advance rates from time to time and may, notwithstanding Sections 1 and 10 of the Revolving Note, consent to overadvances in each case in an amount not to exceed $4.0 million during the period from the commencement of Debtor's bankruptcy filing through the Maturity Date. |
| **Maturity Date:** | The DIP Facility shall mature, and all indebtedness related to the Revolving Note shall be due and payable in full in cash, on the earliest to occur of (a) the date that is 6 months after the commencement of the bankruptcy case, (b) upon the closing of any sale of all or substantially all of the assets of the Debtor pursuant to Section 363 of the Bankruptcy Code or any other sale process, or (c) upon the effective day of a confirmed plan under section 1129 of the Bankruptcy Code. |
| **Interest Rate:** | Outstanding advances under the DIP Facility and the Pre-Petition Indebtedness relating to the Revolving Note will bear interest at the rate of LIBOR plus 5%. All Pre-Petition Indebtedness related to the Term Note shall continue to bear interest at the existing rate as currently set forth in the Loan Documents |
| **Default Interest Rate:** | Upon the occurrence and during the continuance of an Event of Default occurring post-petition, the aggregate principal amount of all outstanding amounts owing by Debtor to CoBank will bear interest at the rates described above, plus four percent. |
| **Post-Petition Collateral** | The DIP Facility will be secured by a first-priority perfected security interest and lien in favor of CoBank on all collateral (as set forth in Section 2.3 of the Credit Agreement the "**Pre-Petition Collateral**") plus all other assets of the Debtor, subject only to (a) valid, perfected, prior, non-avoidable, pre-petition liens permitted under Section 6.3 of the Credit Agreement, (b) subject to CoBank's approval, a lien in favor of Farm Credit Leasing Corporation on bins acquired by the Debtor post-petition, and (c) the Carveout. |

**Carveout**

A "carveout" from CoBank's prepetition and post-petition claims (whether secured or unsecured), including CoBank's superpriority administrative expense claim, in an amount equal to (a) $50,000, plus the allowed fees and expenses of the U.S. Trustee's Office, for unpaid administrative expenses incurred following an Event of Default occurring post-petition, and (b) an amount equal to the payment made by Graceland Fruit, Inc. ("**Graceland**") in October and/or November 2017, up to $1,000,000, to be remitted to growers of the Debtor, for frozen cranberries from the 2017 crop arising from Graceland's pre-payment for the purchase of such frozen cranberries, but only to the extent Graceland has not received delivery of such frozen cranberries. Such administrative expenses shall be limited to allowed fees and expenses of the U.S. Trustee's office, the Debtor's counsel and other professionals that are approved by the Bankruptcy Court, and any professionals employed by an official creditors' committee (except to the extent such fees and expenses are incurred in prosecuting claims against CoBank or in hindering, delaying or otherwise attempting to prevent the enforcement by CoBank of its liens or realization upon any collateral). Prior to the occurrence of an Event of Default, such administrative expense may be paid in accordance with the Budget described below.

**Use of Proceeds:**

Proceeds shall be used to provide for working capital, and other general corporate purposes and administrative expenses of the Debtor during its Chapter 11 Case, in accordance with the Budget. No proceeds of the DIP Facility shall be used to pay any fees or expenses incurred at any time in connection with any action which seeks to invalidate, avoid, subordinate or otherwise impair the claims of CoBank under any of the Loan Documents or otherwise in connection with the DIP Facility, or any liens or priorities created under the Loan Documents or otherwise in connection with the DIP Facility, or which seeks to recover on any claims against or transfers made to CoBank.

**Priority of DIP Advances:**

All indebtedness, liabilities and other obligations of the Debtor under the DIP Facility (including without limitation all DIP Advances), all obligations owing under any cash management arrangement with CoBank and all other post-petition indebtedness to CoBank will have superpriority administrative expense status and be secured by a first priority perfected security interest and lien on the Post-Petition Collateral, subject only to (a) valid, perfected, prior, non-avoidable, pre-petition liens, permitted in Section 6.3 of the Credit Agreement, (b) the Carveout, and (c) subject to CoBank's approval, a lien in favor of Farm Credit Leasing Services Corporation on bins acquired by Debtor post-petition.

**Adequate Protection and Use of Cash Collateral:** The Debtor shall continue to pay all amounts and fees required under the Loan Documents, including without limitation all regularly scheduled principal payments and interest thereon with respect to the Revolving Note and the Term Note. The Debtor will stipulate that, prior to the Maturity Date, the Debtor (a) will not seek authority for any use of cash collateral of CoBank without the prior written consent of CoBank (other than as contemplated by this Summary), (b) without the prior written consent of CoBank, will not sell, lease or otherwise transfer any collateral other than inventory in the ordinary course of business in accordance with the Budget, (c) will not seek to prime any lien of CoBank in any of the Pre-Petition Collateral or Post-Petition Collateral, (d) will not obtain any DIP financing (other than the DIP Facility) until (i) all other indebtedness, liabilities and other obligations (other than contingent indemnification obligations) at any time owing by the Debtor to CoBank have been paid in full in cash and (ii) all commitments of CoBank under the DIP Facility and the Loan Documents have been terminated, (e) will keep insured and properly care for all tangible collateral, and (f) will account for all cash collateral of CoBank. The Debtor agrees that none of the collateral of CoBank shall be subject to any surcharge under Section 506(c) of the Bankruptcy Code and the "equities of the case" exception in Section 552 of the Bankruptcy Code shall not apply with respect to any such collateral.

**Unused Line Fee:** The Debtor agrees to pay to CoBank a Unused Line Fee on the average daily unused available portion of the DIP Commitment at the rate of 0.250% per annum (calculated on a 360-day basis), payable monthly in arrears by the 20th day following each month.

**Application of Proceeds of Any Sale:** All proceeds from the sale of inventory in the ordinary course of business shall be remitted to the Lender for application to the outstanding principal and interest under the Revolving Note until paid in full. All proceeds of any sale or other disposition of collateral (other than the sale of inventory in the ordinary course of business in accordance with the Budget) shall be remitted to the Lender for application in such order as the Lender may determine in its sole discretion. Notwithstanding the foregoing, the payment made by Graceland to the Debtor in October and/or November 2017 for the purchase of up to $1,000,000 for frozen cranberries from the 2017 crop, may be remitted by the Debtor to its grower members for 2017 crop deliveries in accordance with the Budget, unless CoBank has made an advance under the DIP Facility to permit the Debtor to make such payments to growers.

No proceeds or other amounts received by CoBank will be applied to payment of the outstanding principal amount of DIP Advances until the outstanding principal balance of the Revolving Note and all accrued but unpaid interest thereon has been paid in full in cash.

| | |
|---|---|
| **Retention of Counsel and Consultants; Reimbursement of Expenses:** | The Debtor will reimburse CoBank on demand for all costs and expenses incurred by CoBank in connection with the DIP Facility and the Loan Documents (the "**Costs and Expenses**") as currently provided in the Loan Documents, and authorizes CoBank to advance funds under the DIP Facility for immediate application to the Costs and Expenses. The Costs and Expenses described in the Budget are for information purposes only, and the Costs and Expenses may be greater or less than the amounts set forth in the Budget. |
| **Cash Management:** | All documents evidencing cash management services will remain in effect, with such changes to cash management services, procedures and requirements as the unit, division, subsidiary or affiliate of CoBank providing such cash management services may require, and the Debtor will continue to perform all obligations thereunder, including, without limitation, reimbursement for charges under corporate credit cards. However, CoBank will not serve as a depository under Section 345 of the Bankruptcy Code for funds of the Debtor. |
| **Loan Covenants/Reporting Requirements:** | The loan covenants will include the following:<br>1. The DIP Facility will also contain the covenants, representations and warranties under Credit Agreement. Such provisions may be modified and supplemented to reflect the terms set forth in this Summary and as otherwise agreed between Debtor and CoBank.<br>2. The Debtor will not seek any other debtor-in-possession financing during the pendency of its bankruptcy proceedings unless such financing is sufficient in amount and is actually used to fully repay all Pre-Petition Indebtedness, all DIP Advances and all other post-petition indebtedness of the Debtor to CoBank.<br>3. The Debtor shall not use any funds or the proceeds of any DIP Advance in a manner or for a purpose other than in accordance with the Credit Agreement, this Summary and the Budget, or on such other terms as CoBank may agree.<br>4. The Debtor shall not (a) permit aggregate disbursements by the Debtor for all expenses for any four-week period, beginning with the period ending October 6, 2017, to exceed 110% of the aggregate amount of expenses set forth in the Budget for such week, or (b) permit revenues of the Debtor generated in the ordinary course of business during any four-week period, beginning with the period ending October 6, 2017, to be less than 90% of the amount of revenues set forth in the Budget for such period.<br>5. Not later than six months after the commencement of the bankruptcy case, the Debtor shall have confirmed a plan of reorganization that provides for payment, in full in cash, on the effective date of the plan of all obligations of the Debtor to CoBank, or on such other terms as CoBank may agree.<br>6. Without the prior written consent of CoBank, the Debtor will not sell, lease or otherwise transfer any assets of the Debtor other than inventory in the ordinary course of business in accordance with the Budget.<br>7. All disbursements of the Debtor shall be consistent with the Budget. |

8.  As soon as available, but in no event later than 5:00 p.m. Mountain prevailing time on Thursday of each week, the Debtor shall provide CoBank an actual-to-date Budget weekly variance report, including a comparison of actual performance with the Budget for the prior week and a narrative explaining deviations greater than 10% of any line item.

9.  The Debtor shall not enter into any shared services agreement, new freezer storage agreement, lease or other material agreement without the Lender's prior written consent.

10. The Debtor shall deliver to the Lender a written report setting forth the status of the Bankruptcy Case and the status of any recapitalization or reorganization plan of the Debtor and any other business plans of the Debtor.  The Debtor will keep CoBank informed about the progress of its negotiation with Graceland on terms of a potential reorganization plan, and will provide CoBank with drafts of any such plan and other agreements and information in a manner that permits CoBank's participation in such negotiation.  The Debtor will also promptly deliver to the Lender any other information that the Lender may reasonably request.

11. The Debtor shall not open any new deposit or securities accounts; provided however, the Debtor may open deposit or securities accounts if such account is pledged to CoBank and CoBank has received a deposit account control agreement in form and substance acceptable to CoBank.

12. The Debtor shall pay all regularly scheduled principal payments and interest on the Pre-Petition Indebtedness and the DIP Advances as and when due under the Loan Documents.

13. The Debtor shall maintain accurate records regarding the delivery to Graceland of any 2017 frozen cranberries for which Graceland made pre-payment in October and/or November 2017, and shall promptly advise CoBank regarding any such deliveries and corresponding adjustments to the Carveout.

14. Such additional covenants as CoBank and the Debtor may agree.

| | |
|---|---|
| **Waiver of Stay/Plan Deadlines, or Non-Bankruptcy Law or Claims;** | The Debtor agrees that none of the collateral of CoBank shall be subject to any surcharge under Section 506(c) of the Bankruptcy Code and the "equities of the case" exception in Section 552 of the Bankruptcy Code shall not apply with respect to any such collateral |
| **Releases:** | The Debtor shall absolutely and unconditionally release and forever discharge CoBank, and any and all participants, parent corporations, subsidiary corporations, affiliated corporations, insurers, indemnitors, successors and assigns thereof, together with all of the present and former directors, officers, agents, consultants and employees of any of the foregoing, from any and all known claims, demands or causes of action of any kind, nature or description, whether arising in law or equity or upon contract or tort or under any state or federal law or otherwise, which the Debtor has had, now has or has made claim to have against any such Person for or by reason of any act, omission, matter, cause or thing whatsoever arising from the beginning of time to and including the date of the execution of the DIP Facility Amendment, whether such claims, demands and causes of action are matured or unmatured. |
| **Documentation:** | All advances under the DIP Facility shall be deemed additional advances under the Credit Agreement and shall be governed by the terms and conditions thereof (as amended by the DIP Facility Amendment described below), and shall be subject to the rights and priorities set forth in orders of the Bankruptcy Court approving or authorizing the DIP Facility and all motions relating thereto, all of which shall be in form and substance acceptable to CoBank in its sole discretion. The Credit Agreement will be amended to reflect the inclusion of the DIP Facility and the other terms and conditions outlined herein. In connection with such amendment (the "**DIP Facility Amendment**"), the Debtor will execute and deliver or cause to be executed and delivered such documents, instructions, certificates and assurances as CoBank may reasonably request. The DIP Facility Amendment will contain such warranties, covenants, and conditions as are normally contained in documents relating to similar credit facilities including, without limitation, admissions as to the amount of the pre-petition claims of CoBank and the collateral security therefor, and that such claims are due and owing without offset, defense or claims or counterclaims of any kind and are not subject to avoidance in the Bankruptcy Case (but subject to the rights of the official creditor's committee to investigate such pre-petition claims). |
| **Events of Default:** | Events of Default will include:<br><br>1. Any default (not otherwise in existence as of the date of commencement of the bankruptcy case) in the performance, or breach, of any covenant or agreement set forth herein or under the Loan Documents; |

2. The order entered by the Bankruptcy Court approving the terms of the DIP Facility, or any portion thereof, shall be vacated, reversed or modified.

3. Relief from the automatic stay shall be granted in favor of any other secured creditor to foreclose on any collateral of CoBank.

4. A Chapter 11 Trustee or examiner with expanded powers shall be appointed, or the Debtor's bankruptcy case shall be converted to a case under Chapter 7 of the Bankruptcy Code.

5. The Debtor's bankruptcy case shall be dismissed.

6. The Debtor's chief restructuring officer or other board-appointed turnaround professional of the Debtor resigns or is terminated by the Debtor and no replacement acceptable to CoBank shall have been named by the Debtor within five business days after such resignation or termination.

7. The "Events of Default" under the Credit Agreement, as modified and supplemented to reflect the terms set forth in this Summary.

8. Any agreement between the Debtor and Graceland or any other material agreement of the Debtor is terminated, breached, or otherwise results in a material adverse change.

**Rights and Remedies:**

Upon the occurrence of any Event of Default, CoBank may, in its sole discretion, (a) cease funding any advances under the DIP Facility, and (b) file an affidavit with the Bankruptcy Court certifying the occurrence of the Event of Default. CoBank shall, contemporaneously with the filing of such an affidavit with the Bankruptcy Court, serve via email a copy of the affidavit on the Debtor and its counsel, the U.S. Trustee's office, and counsel for any official creditors' committee. Contemporaneously with the filing and service of the affidavit, CoBank may request (and Debtor shall cooperate in scheduling) an expedited hearing regarding relief from the automatic stay for CoBank to enforce its rights and remedies under the Loan Documents and applicable law. The Debtor agrees that such expedited hearing may be heard as early as forty-eight (48) hours after CoBank files such affidavit. The Debtor may file a response with the Bankruptcy Court opposing relief from the automatic stay, which response must be limited to whether an Event of Default has occurred that has not been cured. The Debtor agrees that if the Court determines that an uncured Event of Default has occurred, the Court may enter an order terminating the automatic stay so that CoBank may enforce its rights and remedies. If the Debtor fails to file a response, the Bankruptcy Court may enter an order terminating the automatic stay, which the Debtor agrees may be entered.

Without limiting any of the foregoing, the obligation of CoBank to fund any DIP Advance will be subject to the condition that, on the date of such DIP Advance, no Event of Default has occurred and is continuing or would result from such DIP Advance.

**Conditions of**

Conditions of Approval:

| | |
|---|---|
| **Approval:** | 1. On or before the filing of any bankruptcy case by the Debtor, the Debtor shall have delivered to CoBank a detailed weekly budget in form and substance satisfactory to CoBank (with such supporting detail as CoBank or its financial advisors may request) for the 19-week period beginning September 10, 2017 following the filing of the bankruptcy case, which budget shall be updated every week no later than Thursday of the following week, beginning with the week ending September 30, 2017, thereafter for the immediately succeeding 19-week period (the initial budget, together with all updates thereto which are acceptable to CoBank, the "**Budget**"). Each update to the Budget shall be accompanied by a variance analysis to the most recently accepted Budget. Each update to the Budget and all such variances shall be acceptable to CoBank in its reasonable discretion before it accepts such update as the "Budget" for purposes of the DIP Facility.<br><br>2. The Debtor shall have executed and delivered (or caused to be executed and delivered) the DIP Facility Amendment, and all other documents, instructions, certificates and assurances as CoBank may request, in each case in form and substance satisfactory to CoBank in all respects.<br><br>3. CoBank shall have received (a) copies of all "first day pleadings" in the Bankruptcy case, which pleadings shall be acceptable to CoBank in its sole discretion, and (b) entry of an order by the Bankruptcy Court in a form acceptable to CoBank in its sole discretion, after adequate notice to all parties entitled to service, which, among other provisions, approves the DIP Facility Amendment and the Loan Documents as amended thereby on an interim basis, authorizes the Borrower to enter into such documents, and grants CoBank a superpriority administrative expense claim in the bankruptcy proceedings for all DIP Advances and a first priority lien on all collateral, subject only to valid, perfected, non-avoidable, prior pre-petition liens permitted under Section 6.3 of the Credit Agreement, and the Carveout. |

4. The Debtor believes that the terms and conditions of the DIP Loan are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, are supported by fair value and consideration, and are in the best interests of the Debtor and its creditors. The Lender's extension of credit is and will be made in good faith; as such, the Debtor requests a finding that any credit extended to the Debtor will be deemed to have been extended and made in good faith under § 364(e).

5. No security agreements, mortgages, or financing statements shall be necessary to evidence or perfect the security interest of the DIP loan; however, the Debtor will execute

any documents reasonable necessary to memorialize the security interests granted to the DIP Lender as part of the order approving this Motion.

**FACTUAL BACKGROUND**

6. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Omnibus Declaration of Winston Mar In Support of First Day Motions* (the "**Omnibus Declaration**") that was filed concurrently herewith and is incorporated herein by reference.

**A. The Debtor's Chapter 11 business plan.**

7. During this Chapter 11 Case, the Debtor intends to recapitalize and reorganize, confirm a chapter 11 plan and then expediently emerge from bankruptcy, by executing certain objectives as described in the Omnibus Declaration, including, obtaining the post-petition debtor-in-possession financing on the terms described herein.

8. As part of this plan, the Debtor seeks approval to enter into a DIP loan agreement with CoBank in the maximum amount of $13.25 million in order to fund expenses of the Chapter 11 case and provide operating capital and to make payments on the Pre-Petition Indebtedness to CoBank.

**B. Need for Post-Petition Financing**

9. Absent emergency, post-petition financing, the Debtor will not be able to pay employees, will not be able to satisfy various additional monthly obligations, and will be forced to cease operations. If that occurs, the Debtor's revenues would cease, employees would promptly resign, and the value of the Warrens Facility and the Debtor's operations would diminish drastically. CoBank has agreed to provide the post-petition credit facility which includes a carve-out from its proposed post-petition collateral so that Graceland can prepay $1.0 million of 2017 crop in order that the Debtor may pay its growers.

10.    It is vital for the Debtor's continued operations that it obtains post-petition credit sufficient to cover monthly payroll and other obligations until the Debtor is able to propose and confirm a plan of reorganization.

11.    Even if the Debtor was authorized to just use cash collateral of the Lender, operating funds would be insufficient to continue operations.  The Debtor urgently requires financing under § 364 to fund day-to-day operations, to maintain the Warrens Facility and make the payments on the Pre-Petition Secured Obligations.

**C.    Efforts to find other sources of DIP Financing.**

12.    Despite good faith efforts, the Debtor is unable to obtain unsecured credit (allowable under §§ 503(b)(1) or 364(c)(1) as an ordinary administrative expense), unsecured credit (allowable under §§ 364(a) or (b) of the Code), or secured credit (allowable under § 364(c) of the Code).

**D.    The Debtor's Pre-Petition Secured Indebtedness**.

13.    The Debtor's pre-petition secured obligations consist of (a) all pre-petition obligations of Debtor to CoBank (including without limitation all principal, interest, default interest, fees, costs and expenses) under the Credit Agreement dated as of February 11, 2016 (as amended by the Amendment to Credit Agreement dated as of February 15, 2017, the Amendment to Credit Agreement dated as of June 2, 2017, and the Forbearance Agreement and Third Amendment to Credit Agreement dated as of August 17, 2017, and as further amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), the Amended and Restated Monitored Revolving Credit Promissory Note numbered 00100914S01-E dated as of September 22, 2017 (as amended, restated, supplemented or otherwise modified from time to time, the "**Revolving Note**"), and the Amended and Restated Multiple Advance Term Promissory Note numbered 00100914T01-A dated as of February 15, 2017 (as amended, restated, supplemented or otherwise modified

from time to time, the "**Term Note**," and together with the Revolving Note, collectively, the "**Promissory Notes**"), and a Security Agreement dated February 11, 2016 (the "**Security Agreement**"); the Credit Agreement, the Security Agreement and the Promissory Notes, together with any and all related loan and security documents and all other instruments, agreements and other documents delivered in connection therewith, are referred to collectively as the "**Loan Documents**"); and (b) all other indebtedness, liabilities and obligations of the Debtor to CoBank. As of the Petition Date, CranGrow owed CoBank approximately $8,250,000 under the Revolving Note and $14,000,000 under the Term Note. These obligations are secured by the Debtor's assets.

14. Pursuant to the Loan Documents, the Debtor granted CoBank a security interest in all real and personal property belonging to the Debtor and the proceeds thereof ("**Cash Collateral**"). As part of this Motion, the Debtor seeks to use Cash Collateral and requests authority to do so under § 363(c) of the Bankruptcy Code.

15. The result of recent searches of the Wisconsin Secretary of State's records is set forth in the below table:

| **Secured Party** | **Date of Filing** | **Number** | **Collateral Description** |
|---|---|---|---|
| CoBank | 1/13/16 | 160000549321 | All assets of Debtor |
| CoBank | 6/14/17 | 1700008157021 | Amendment |
| Farm Credit Leasing Services Corp | 9/20/16 | 160012395828 | Protective Filing – Lease Specific Equipment |

**E. The Debtor's Unsecured Indebtedness**

16. The Debtor's unsecured creditors are owed approximately $4 million.

**F. The Proposed DIP Facility**

17. After extensive discussions, the Debtor and CoBank have entered into a Summary outlining the material terms and conditions of the DIP Facility which are set forth in the Summary. The Debtor will issue a promissory note in favor of CoBank in the amount of $13.25 million providing an additional amount of $5 million in post-petition credit (the "**Amended Revolving Note**"), providing a mechanism for the gradual rolling up of the outstanding balance of the Revolving Note, and will execute the Fourth Amendment to the Credit Agreement which will amend and restate the provisions of the Credit Agreement.

**LEGAL BASIS FOR RELIEF**

**A. The Financing Motion.**

18. Fed. R. Bankr. P. 4001(c) governs the approval of a debtor's ability to obtain credit as well as agreements to use property outside the ordinary course of business. 11 U.S.C. § 364(d) authorizes a debtor to obtain credit that is secured by a senior or equal lien on property of the estate that is already subject to a lien if, after notice and hearing, the Court finds that: (1) the debtor is unable to obtain such credit otherwise; and (2) there is adequate protection of the existing lienholder's interest in the property of the estate on which the senior or equal lien is proposed to be granted. Such extensions of post-petition credit are given "super priority" status in bankruptcy proceedings. *See In re Midway Airlines, Inc.*, 383 F.3d 663, 669 (7th Cir. 2004).

19. Given the amount of CoBank's pre-petition secured indebtedness, the Debtor is not able to obtain traditional financing from any outside lender without obtaining a priming order under § 364(d). In the Debtor's business judgment, obtaining financing through CoBank is the only available course and represents a more prudent course; it will allow the Debtor to continue operating, and maximize the Debtor's value for the benefit of its creditors. See *In re Grede Foundries, Inc.*, 2009 Bankr. LEXIS 5398, at *12 (W.D. Wis. Bankr. July 24, 2009)

(granting motion for post-petition financing where debtor is "unable to obtain adequate unsecured credit . . . or other financing . . . on equal or more favorable terms than those" sought via its motion, and where debtor exercised "prudent business judgment" in seeking approval for such financing); see also *In re Renew Energy, LLC*, 2009 Bankr. LEXIS 5403, at *9-10 (W.D. Wis. Bankr. Feb. 2, 2009) (approving super-priority financing pursuant to section 364(d) as a "bridge loan" to allow debtor to "fund day-to-day operations, including meeting payroll and paying suppliers of raw materials and utility services necessary to maintain the debtor's business" while debtor worked to secure a steady source of cash collateral).

20.    In this case, the Debtor engaged in intensive negotiations over the terms of the post-petition financing.  The Debtor initially requested financing in the form of a DIP loan secured by all of the Debtor's assets and use of cash collateral with adequate protection provisions such as the granting of replacement liens to the extent of the diminution in value of the Bank's pre-petition collateral.  CoBank was unwilling to agree to such an arrangement and is requiring as a condition to the DIP Facility that it be permitted to gradually "roll-up" the amounts due under the Revolving Note in the DIP Facility.  Under this arrangement, CoBank maintains its pre-and post-petition collateral which allows the Debtor to borrow more funds to pay the operations, fees and costs of the Chapter 11 Case.  Since the Debtor's post-petition expenses would exceed the amount of any traditional DIP loan CoBank would be willing to make, there is a substantial benefit to the estate under this roll-up financing.  Further, CoBank has agreed to a carve-out of its collateral to allow a pre-payment by Graceland to the Debtor for 2017 inventory.  This is extremely significant to the Debtor since the proceeds of the prepayment will be used to pay its growers whom have not been paid any significant amount for their 2016 Crop.

21. Courts do approve roll-up financing. See, e.g., In re Cal Dive Int'l, Inc., No. 15-10458 (CSS), 2015 Bankr. LEXIS 4540, at *571 (U.S. Bankr. D. Del. Apr. 20, 2015); In re RadioShack Corp., No. 15-10197 (BLS), 2015 Bankr. LEXIS 4541, at *214 (U.S. Bankr. D. Del. Mar. 12, 2015); In re Walking Co., Nos. 9:09-bk-15138-RR, 9:09-bk-15137-RR, 9:09-bk-15139-RR, 2010 Bankr. LEXIS 5194, at *25 (U.S. Bankr. C.D. Cal. Jan. 14, 2010); In re Blockbuster Inc., Nos. 10-14997 (BRL), 16, 2010 Bankr. LEXIS 4249, at *15 (U.S. Bankr. S.D.N.Y. Sep. 24, 2010). The Supreme Court recently noted that courts approve roll-ups (even though they violate the Code's priority scheme) in order to serve "significant Code-related objectives" and "enable a successful reorganization and make even the disfavored creditors better off." Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 985 (2017).

22. After careful consideration by its Members at a meeting held on Saturday, September 23, 2017, following a discussion of alternatives, the Debtor and its Members believe that the proposed DIP Facility is a reasonable roll-up structure which gives a meaningful infusion of new capital rather than merely enhancing the lender's collateral position. The Debtor notes that structure allows for a roll-up of the Pre-Petition Indebtedness gradually rather than the lender having all of its prepetition debt paid at once and that CoBank has made a significant concession in allowing a carve-out of its collateral for payment to the growers.

23. The Debtor has no other reasonable alternatives for DIP financing in this case. If the Debtor cannot obtain DIP financing any other way, it would be forced to liquidate.

24. Under the proposed DIP Facility, any party in interest would be allowed to challenge the validity, amount and priority of the Pre-Petition Indebtedness for a period of 60 days following entry of the Interim Order.

25. The Debtor submits that the post-petition financing contemplated herein and through the DIP loan is fair, reasonable, reflects the exercise of Debtor's sound business

judgment, and is in good faith, as that term is used in 11 U.S.C. § 364(e). Therefore, CoBank should be entitled to the full protection and benefits of the provisions of section 364(e) in the event that the order authorizing the Agreement is vacated, reversed, or modified on appeal or otherwise.

**B. Use of Cash Collateral**

26. Under § 363(c)(2) of the Code, cash collateral cannot be used by a debtor unless it has consent from the secured lender, or the Court authorizes such use after notice and a hearing. As part of its agreement to provide the DIP Facility, CoBank has agreed to the use of its cash collateral to fund the Debtor's operations and make payments toward the DIP Facility.

**C. Interim Relief**

27. Lastly, Fed. R. Bankr. P. 4001(c) provides that a final hearing on the motion may be commenced no earlier than 14 days after service. As set forth in the Budget, the Debtor requires DIP advances during the first two weeks of this case. Debtor proposes holding an interim hearing on or before September 27, 2017, to avoid immediate and irreparable harm to the Debtor's estate.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested in the Motion and such other and further relief for the Debtor as may be just and proper.

Dated: September 26, 2017.

By: *<u>/s/ Ann Ustad Smith</u>*

Ann Ustad Smith
Michael Best & Friedrich LLP
One South Pinckney Street, Suite 700
Madison, WI 53703
Phone (608) 283-2251

Fax (608) 283-2275
ausmith@michaelbest.com

Justin M. Mertz
Michael Best & Friedrich LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, WI 53202
Phone (414) 225-4972
Fax (414) 277-0656
jmmertz@michaelbest.com

Peggy Hunt – *Admission Pending*
Dorsey & Whitney LLP
111 S. Main Street Suite 2100
Salt Lake City, UT 84111-2176
Phone (801) 933-7360
Fax (801) 933-7373
hunt.peggy@dorsey.com

Robert Franklin – *Admission Pending*
Dorsey & Whitney LLP
305 Lytton Avenue
Palo Alto, CA  94301
Phone (650) 857-1717
Fax (650) 857-1288
franklin.robert@dorsey.com

*Proposed Attorneys for the Debtor*

DO NOT DISTRIBUTE

# Cranberry Growers Cooperative

## Debtor-in-Possession Budget

September 25, 2017

*DO NOT DISTRIBUTE*

**CranGrow**
**Weekly Cash Flow Forecast**
**DIP Budget Assumptions**

| Category | Weekly Average | DIP Budget Total | Assumptions |
|---|---|---|---|
| **Production** | | | |
| Production (LBS Processed) | 753,421 | 14,315,000 | Ramp in production to four shift schedule occurred at end of August, processing approximately 32-35k barrels per month through forecast. |
| Production (LBS of SDC Produced) | 331,395 | 6,296,500 | Product yields through the end of the calendar year estimated based on levels achieved through June, with SDC yields increasing to 50% in Jan-18 (from 43%) (note, the yields for by-products are held constant through forecast). |
| **Sales** | | | |
| Net Sales | $ 443,485 | $ 8,426,206 | SDC sales of 15 loads per month by CGC through calendar year end, and SDC sales to Graceland based on confirmed orders through October, ramping to production levels at the end of December. Sales of by-products (ie. concentrate, sort-outs and pomace) at production levels through forecast. |
| **Receipts** | | | |
| AR Collections | 308,066 | 5,853,254 | Assumes collection on 60 day terms, based on the terms of the Service Agreement with Graceland and to account for foreign sales by CGC. |
| Non AR Collections (Inventory Purchase) | 260,442 | 4,948,404 | Represents sale of all non-GMO SDC finished goods to Graceland at exit (sale price of $1.12 per pound SDC), and $1.0mm purchase of frozen inventory end of Oct-17. |
| **Trade Vendor Payments** | | | |
| Trade Vendor Payments | 279,363 | 5,307,903 | Driven by year-to-date and run-rate expenses on a per barrel basis. Represents production costs (excluding payroll), and storage fees. |
| Grower Payments | 52,632 | 1,000,000 | Represents distribution from sale of $1.0mm of frozen cranberry inventory to Graceland per the terms of the 2017 Crop Raw Cranberry Purchase Agreement. |
| **Operating Disbursements** | | | |
| Payroll & Taxes | 59,832 | 1,136,815 | Based on employee build-up for corporate and 4 shift production schedule. |
| Utilities | 17,992 | 341,851 | Based on historical expenses for variable costs related to production (on a per barrel basis) and other fixed costs. |
| Maintenance & Repairs | 8,806 | 167,308 | Based on average monthly spend year-to-date. |
| Rent | 184 | 3,500 | Based on monthly rent for single sales office. |
| Freight-in / Freight-out | 16,911 | 321,306 | Based on average monthly expense (percent of sales). |
| Sales Commissions | 13,577 | 257,970 | Based on commission of 2.0% on sales. Company pays commissions on a portion of its SDC sales, and minimal amounts on concentrate and by-products. |
| Insurance & Benefits | 9,499 | 180,479 | Based on average monthly spend year-to-date, and vendor build-up going forward. |
| Capital Lease Payments | 5,250 | 99,741 | Based on contractual obligations, including new capital lease executed in Sept-17. |
| Temporary Labor / Services | 4,858 | 92,308 | Based on average monthly spend year-to-date. |
| Taxes | - | - | Represents property taxes. Not forecasted to be paid within forecast period. |
| Other | 8,100 | 153,900 | Based on average monthly spend year-to-date, and specific vendors going forward. |
| Contingency | 1,113 | 21,151 | Represents additional potential payments in forecast period. |
| **Non-Operating Disbursements** | | | |
| Non-Operating Professional Fees | 9,162 | 174,077 | Based on average monthly spend year-to-date. Includes two appraisals being completed in September. |
| DIP Interest and Facility Fees / Expenses | 4,895 | 92,997 | DIP Interest = L+5.00% (one-month LIBOR assumed at 1.50%), 0.25% commitment fee, and $1.5k monthly fees. |
| CoBank Interest and Facility Fees / Expenses | 27,749 | 527,240 | LoC Interest = L+5.00% (one-month LIBOR assumed at 1.50%), 0.25% commitment fee, and $1.5k monthly fees; TL Interest = 5.70%. |
| CoBank Term Loan Repayment | 17,105 | 325,000 | Amortization of $65,000 per month continued post filing. |
| Other Cash Interest | - | - | Not applicable to forecast. |
| Capital Expenditures | 19,076 | 362,436 | Based on Company's review of essential items. |
| **Restructuring Costs** | | | |
| Restructuring Professional Fees | 86,146 | 1,636,780 | Estimated fees based on restructuring fee schedule (see separate worksheet for build), and representative advisors. |
| Reclamation Claims / Deposits | 2,632 | 50,000 | Estimated utility deposits to maintain services. |

DO NOT DISTRIBUTE

**CranGrow**
**Weekly Cash Flow Forecast**
**DIP Budget**

| | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Last Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | |
| *week ending Sunday* | Week Ending 9/10/2017 | Week Ending 9/17/2017 | Week Ending 9/24/2017 | Week Ending 10/1/2017 | Week Ending 10/8/2017 | Week Ending 10/15/2017 | Week Ending 10/22/2017 | Week Ending 10/29/2017 | Week Ending 11/5/2017 | Week Ending 11/12/2017 | Week Ending 11/19/2017 | Week Ending 11/26/2017 | Week Ending 12/3/2017 | Week Ending 12/10/2017 | Week Ending 12/17/2017 | Week Ending 12/24/2017 | Week Ending 12/31/2017 | Week Ending 1/7/2018 | Week Ending 1/14/2018 | Week Ending 1/21/2018 | 19 Week Total |
| **Sales** | | | | | | | | | | | | | | | | | | | | | |
| **Sales** | **$ 158,892** | **$ 424,013** | **$ 435,425** | **$ 483,963** | **$ 373,488** | **$ 428,438** | **$ 349,588** | **$ 332,100** | **$ 428,438** | **$ 401,107** | **$ 433,952** | **$ 455,295** | **$ 439,169** | **$ 484,766** | **$ 520,583** | **$ 510,986** | **$ 563,765** | **$ 405,300** | **$ 472,850** | **$ 482,983** | **$ 8,426,206** |
| Barrels Processed | 4,181 | 8,000 | 9,000 | 6,000 | 8,000 | 9,000 | 6,000 | 8,000 | 9,000 | 6,000 | 8,000 | 9,000 | 6,000 | 8,000 | 9,000 | 6,000 | 8,000 | 6,000 | 7,000 | 7,150 | 143,150 |
| LBS Processed | 418,139 | 800,000 | 900,000 | 600,000 | 800,000 | 900,000 | 600,000 | 800,000 | 900,000 | 600,000 | 800,000 | 900,000 | 600,000 | 800,000 | 900,000 | 600,000 | 800,000 | 600,000 | 700,000 | 715,000 | 14,315,000 |
| LBS of SDC Produced | 168,000 | 344,000 | 387,000 | 258,000 | 344,000 | 387,000 | 258,000 | 344,000 | 387,000 | 258,000 | 344,000 | 387,000 | 258,000 | 344,000 | 387,000 | 258,000 | 344,000 | 300,000 | 350,000 | 357,500 | 6,296,500 |
| Gallons of Concentrate Produced | - | 6,000 | 6,750 | 4,500 | 6,000 | 6,750 | 4,500 | 6,000 | 6,750 | 4,500 | 6,000 | 6,750 | 4,500 | 6,000 | 6,750 | 4,500 | 6,000 | 4,500 | 5,250 | 5,363 | 107,363 |
| LBS of Seeds Produced | 10,966 | 16,000 | 18,000 | 12,000 | 16,000 | 18,000 | 12,000 | 16,000 | 18,000 | 12,000 | 16,000 | 18,000 | 12,000 | 16,000 | 18,000 | 12,000 | 16,000 | 12,000 | 14,000 | 14,300 | 286,300 |
| LBS of Sort Outs Produced | 2,523 | 64,000 | 72,000 | 48,000 | 64,000 | 72,000 | 48,000 | 64,000 | 72,000 | 48,000 | 64,000 | 72,000 | 48,000 | 64,000 | 72,000 | 48,000 | 64,000 | - | - | - | 984,000 |
| LBS of SDC Sold | 126,200 | 305,500 | 305,000 | 383,500 | 258,500 | 298,500 | 258,500 | 220,000 | 298,500 | 306,425 | 314,746 | 323,484 | 341,832 | 362,015 | 384,217 | 408,638 | 435,502 | 300,000 | 350,000 | 357,500 | 6,212,359 |
| Gallons of Concentrate Sold | 1,100 | 6,000 | 6,750 | 4,500 | 6,000 | 6,750 | 4,500 | 6,000 | 6,750 | 4,500 | 6,000 | 6,750 | 4,500 | 6,000 | 6,750 | 4,500 | 6,000 | 4,500 | 5,250 | 5,363 | 107,363 |
| LBS of Seeds Sold | 1,870 | 16,000 | 18,000 | 12,000 | 16,000 | 18,000 | 12,000 | 16,000 | 18,000 | 12,000 | 16,000 | 18,000 | 12,000 | 16,000 | 18,000 | 12,000 | 16,000 | 12,000 | 14,000 | 14,300 | 286,300 |
| LBS of Sort Outs Sold | - | 64,000 | 72,000 | 48,000 | 64,000 | 72,000 | 48,000 | 64,000 | 72,000 | 48,000 | 64,000 | 72,000 | 48,000 | 64,000 | 72,000 | 48,000 | 64,000 | - | - | - | 984,000 |
| **Cash Flow** | | | | | | | | | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | | | | | | | | | |
| AR Collections | 26,775 | 215,608 | 14,250 | 399,000 | 16,781 | 95,600 | 107,550 | 248,215 | 446,426 | 243,215 | 400,113 | 423,475 | 519,813 | 349,588 | 416,488 | 385,438 | 308,200 | 416,488 | 436,957 | 410,052 | 5,853,254 |
| Non AR Collections (Inventory Purchases) | - | - | - | - | - | - | - | - | 1,000,000 | - | - | - | - | - | - | - | - | - | - | 3,948,404 | 4,948,404 |
| **Total Receipts** | **26,775** | **215,608** | **14,250** | **399,000** | **16,781** | **95,600** | **107,550** | **248,215** | **1,446,426** | **243,215** | **400,113** | **423,475** | **519,813** | **349,588** | **416,488** | **385,438** | **308,200** | **416,488** | **436,957** | **4,358,457** | **10,801,658** |
| **Trade Vendor Payments** | | | | | | | | | | | | | | | | | | | | | |
| Trade Vendor Payments | - | 165,592 | 165,592 | 410,670 | 146,000 | 618,124 | 409,894 | 446,394 | 605,281 | 409,894 | 287,104 | 164,250 | 232,892 | 146,000 | 164,250 | 109,500 | 406,716 | 164,250 | 109,500 | 146,000 | 5,307,903 |
| Grower Payments | - | - | - | - | - | - | - | - | 1,000,000 | - | - | - | - | - | - | - | - | - | - | - | 1,000,000 |
| **Total Trade Vendor Payments** | **-** | **165,592** | **165,592** | **410,670** | **146,000** | **618,124** | **409,894** | **446,394** | **1,605,281** | **409,894** | **287,104** | **164,250** | **232,892** | **146,000** | **164,250** | **109,500** | **406,716** | **164,250** | **109,500** | **146,000** | **6,307,903** |
| **Operating Disbursements** | | | | | | | | | | | | | | | | | | | | | |
| Payroll & Taxes | 111,036 | - | 126,313 | - | 126,313 | - | 126,313 | - | 126,313 | - | 126,313 | - | 126,313 | - | 126,313 | - | 126,313 | - | 126,313 | - | 1,136,815 |
| Utilities | - | 202 | 43,251 | 413 | 2,447 | 202 | 61,848 | - | 2,860 | 202 | 4,768 | 65,100 | 2,860 | 202 | - | 71,968 | - | 2,860 | 202 | 82,468 | 341,351 |
| Maintenance & Repairs | - | 18,462 | 18,462 | 18,462 | 18,462 | 9,231 | 9,231 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 167,308 |
| Rent | - | 500 | 500 | 500 | - | 500 | - | - | - | - | 500 | - | - | - | 500 | - | - | - | - | 500 | 3,500 |
| Freight-in / Freight-out | - | 10,663 | 10,861 | 6,530 | 23,218 | 86,365 | 13,001 | 13,351 | 14,839 | 11,451 | 13,136 | 10,719 | 10,182 | 13,136 | 12,298 | 13,305 | 13,960 | 13,465 | 14,863 | 15,962 | 321,306 |
| Sales Commissions | - | 35,423 | 28,140 | 8,480 | 13,709 | 19,679 | 7,470 | 8,569 | 6,992 | 21,642 | 8,569 | 8,022 | 8,679 | 24,106 | 8,783 | 9,695 | 10,412 | 10,220 | 11,275 | 8,106 | 257,970 |
| Insurance & Benefits | - | 31,495 | 14,922 | 11,772 | 18,800 | - | 11,772 | - | 18,800 | - | 11,772 | - | 18,800 | - | - | 11,772 | - | 18,800 | - | 11,772 | 180,473 |
| Capital Lease Payments | - | - | - | 24,935 | - | - | - | - | 24,935 | - | - | - | 24,935 | - | - | - | 24,935 | - | - | - | 99,741 |
| Temporary Labor / Services | - | 6,923 | 6,923 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 92,308 |
| Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other | 500 | 13,364 | 12,331 | 19,466 | 13,711 | 4,292 | 4,796 | 9,468 | 11,702 | 2,471 | 2,401 | 11,863 | 12,517 | 2,211 | 2,471 | 4,796 | 9,468 | 11,702 | 2,471 | 2,401 | 153,900 |
| Contingency | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 21,151 | - | - | - | - | - | 21,151 |
| **Total Operating Disbursements** | **111,536** | **117,030** | **261,703** | **95,175** | **221,275** | **124,885** | **239,046** | **41,772** | **216,825** | **46,150** | **177,843** | **106,088** | **214,671** | **50,039** | **181,901** | **121,921** | **195,472** | **67,432** | **165,508** | **131,593** | **2,776,329** |
| **Net Cash Flow from Operations** | **(84,761)** | **(67,014)** | **(413,044)** | **(106,845)** | **(350,494)** | **(647,408)** | **(541,390)** | **(239,951)** | **(375,680)** | **(212,830)** | **(64,834)** | **153,137** | **72,249** | **153,548** | **70,337** | **154,017** | **(293,988)** | **184,806** | **161,948** | **4,080,864** | **1,717,427** |
| **Cumulative Net Cash Flow from Operations** | **(84,761)** | **(151,775)** | **(564,820)** | **(671,664)** | **(1,022,158)** | **(1,669,567)** | **(2,210,957)** | **(2,450,908)** | **(2,826,588)** | **(3,039,417)** | **(3,104,251)** | **(2,951,115)** | **(2,878,865)** | **(2,725,317)** | **(2,654,981)** | **(2,500,964)** | **(2,794,952)** | **(2,610,146)** | **(2,448,198)** | **1,632,666** | |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | | | | | | | |
| Non-Operating Professional Fees | - | 6,923 | 97,923 | 6,923 | 6,923 | 6,923 | 3,462 | 3,462 | 3,462 | 3,462 | 3,462 | 3,462 | 3,462 | 3,462 | 3,462 | 3,462 | 3,462 | 3,462 | 3,462 | 3,462 | 174,077 |
| Restructuring Professional Fees | - | 141,425 | 447,221 | 19,000 | 17,500 | 37,500 | 57,500 | 48,750 | 55,417 | 67,917 | 67,917 | 67,917 | 67,917 | 67,917 | 67,917 | 70,833 | 70,833 | 70,833 | 70,833 | 121,633 | 1,636,780 |
| DIP Interest and Facility Fees / Expenses | - | - | - | - | - | - | 4,911 | - | - | - | - | 14,542 | - | - | - | 30,193 | - | - | - | 43,351 | 92,997 |
| CoBank Interest and Facility Fees / Expenses | - | - | 107,595 | - | - | - | 108,178 | - | - | - | - | 113,169 | - | - | - | 102,545 | - | - | - | 95,754 | 527,240 |
| CoBank Term Loan Repayment | - | - | 65,000 | - | - | - | 65,000 | - | - | - | - | 65,000 | - | - | - | 65,000 | - | - | - | 65,000 | 325,000 |
| Other Cash Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Capital Expenditures | - | 42,805 | - | 42,805 | - | 42,805 | - | 42,805 | - | 42,805 | - | 42,805 | - | 42,805 | - | 42,805 | - | - | 20,000 | - | 362,136 |
| Reclamation Claims / Deposits | - | - | - | 50,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 50,000 |
| **Total Non-Operating Disbursements** | **-** | **191,153** | **717,739** | **118,728** | **24,423** | **87,228** | **239,050** | **95,016** | **58,878** | **114,183** | **71,378** | **306,894** | **71,378** | **114,183** | **71,378** | **314,837** | **74,295** | **74,295** | **94,295** | **329,199** | **3,168,530** |
| **Net Cash Flow** | **(84,761)** | **(258,167)** | **(1,130,784)** | **(225,572)** | **(374,917)** | **(734,636)** | **(780,440)** | **(334,967)** | **(434,558)** | **(327,012)** | **(136,212)** | **(153,757)** | **871** | **39,365** | **(1,041)** | **(160,821)** | **(368,283)** | **110,511** | **67,654** | **3,751,664** | **(1,451,103)** |
| **Cumulative Net Cash Flow** | **(84,761)** | **(342,928)** | **(1,473,712)** | **(1,699,284)** | **(2,074,202)** | **(2,808,838)** | **(3,589,278)** | **(3,924,245)** | **(4,358,803)** | **(4,685,815)** | **(4,822,028)** | **(4,975,785)** | **(4,974,914)** | **(4,935,548)** | **(4,936,590)** | **(5,097,410)** | **(5,465,693)** | **(5,355,182)** | **(5,287,529)** | **(1,535,864)** | **-** |
| **Cash Balance** | | | | | | | | | | | | | | | | | | | | | |
| Beginning Book Balance | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Other / Adjustment | 13,108 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Net Cash Flow | (84,761) | (258,167) | (1,130,784) | (225,572) | (374,917) | (734,636) | (780,440) | (334,967) | (434,558) | (327,012) | (136,212) | (153,757) | 871 | 39,365 | (1,041) | (160,821) | (368,283) | 110,511 | 67,654 | 3,751,664 | |
| Revolver Draw (Repayment) | 71,653 | 258,167 | 1,130,784 | 225,572 | 374,917 | 734,636 | 780,440 | 334,967 | 434,558 | 327,012 | 136,212 | 153,757 | (871) | (39,365) | 1,041 | 160,821 | 368,283 | (110,511) | (67,654) | (3,751,664) | |
| Ending Book Balance | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |

DO NOT DISTRIBUTE

**CranGrow**
**Weekly Cash Flow Forecast**
**DIP Budget**

| *week ending Sunday* | *Actual* Last Week Week Ending 9/10/2017 | *Forecast* 1 Week Ending 9/17/2017 | *Forecast* 2 Week Ending 9/24/2017 | *Forecast* 3 Week Ending 10/1/2017 | *Forecast* 4 Week Ending 10/8/2017 | *Forecast* 5 Week Ending 10/15/2017 | *Forecast* 6 Week Ending 10/22/2017 | *Forecast* 7 Week Ending 10/29/2017 | *Forecast* 8 Week Ending 11/5/2017 | *Forecast* 9 Week Ending 11/12/2017 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Borrowing Base** | | | | | | | | | | |
| **Borrowing Base Calculation (All Collateral)** | | | | | | | | | | |
| Accounts Receivable | 1,371,799 | 1,580,204 | 2,001,379 | 2,086,341 | 2,443,048 | 2,775,886 | 3,017,923 | 3,101,808 | 3,083,820 | 3,241,712 |
| Less: Ineligibles | (522,446) | (513,566) | (650,448) | (605,039) | (708,484) | (805,007) | (822,384) | (845,243) | (840,341) | (883,366) |
| Eligible Accounts Receivable | 849,353 | 1,066,638 | 1,350,931 | 1,481,302 | 1,734,564 | 1,970,879 | 2,195,539 | 2,256,566 | 2,243,479 | 2,358,345 |
| Advance Rate | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% |
| **Net BB from Accounts Receivable** | **721,950** | **906,642** | **1,148,291** | **1,259,107** | **1,474,380** | **1,675,247** | **1,866,208** | **1,918,081** | **1,906,957** | **2,004,593** |
| Inventory (Frozen) | 4,456,872 | 4,307,832 | 4,140,162 | 4,028,382 | 3,879,342 | 8,772,419 | 8,660,639 | 8,511,599 | 7,343,929 | 7,232,149 |
| Inventory (Finished Goods) | 3,702,625 | 3,741,125 | 3,823,125 | 3,697,625 | 3,783,125 | 3,871,625 | 3,871,125 | 3,995,125 | 4,083,625 | 4,035,200 |
| Less: Ineligibles | 113,198 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Eligible Inventory | 8,272,696 | 8,098,958 | 8,013,288 | 7,776,008 | 7,712,468 | 12,694,044 | 12,581,764 | 12,556,724 | 11,477,554 | 11,317,349 |
| Advance Rate | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% |
| **Net BB from Inventory** | **5,377,252** | **5,264,323** | **5,208,637** | **5,054,405** | **5,013,104** | **8,251,129** | **8,178,147** | **8,161,871** | **7,460,410** | **7,356,277** |
| Facility Limit | 7,141,883 | 7,141,883 | 7,141,883 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 |
| Total Borrowing Base, before Reserves | 6,099,203 | 6,170,965 | 6,356,928 | 6,313,512 | 6,487,484 | 9,926,376 | 10,044,355 | 10,079,951 | 9,367,367 | 9,360,870 |
| Reserves / Other Adjustments | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) |
| **Total Borrowing Base, net of Reserves** | **5,699,203** | **5,770,965** | **5,956,928** | **5,913,512** | **6,087,484** | **9,526,376** | **9,644,355** | **9,679,951** | **8,967,367** | **8,960,870** |
| **Debt Schedules** | | | | | | | | | | |
| **Debtor-in-Possession Financing** | | | | | | | | | | |
| Beginning DIP Balance | - | - | - | - | 624,572 | 1,016,270 | 1,846,506 | 2,734,496 | 3,317,678 | 4,198,663 |
| (Repayment) | - | - | - | - | - | - | - | - | - | - |
| Draw | - | - | - | 624,572 | 391,698 | 830,236 | 887,990 | 583,182 | 880,984 | 570,227 |
| **Ending DIP Balance** | **-** | **-** | **-** | **624,572** | **1,016,270** | **1,846,506** | **2,734,496** | **3,317,678** | **4,198,663** | **4,768,890** |
| DIP Availability (less LoC balance) | - | - | - | (2,796,588) | (2,997,534) | (293,278) | (955,739) | (1,255,109) | (2,402,252) | (2,735,761) |
| DIP Facility Limit | - | - | - | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 |
| **Total Liquidity (Ending Cash+Availability DIP & LoC)** | **-** | **-** | **-** | **(2,796,588)** | **(2,997,534)** | **(293,278)** | **(955,739)** | **(1,255,109)** | **(2,402,252)** | **(2,735,761)** |
| **Bank Line of Credit** | | | | | | | | | | |
| Beginning Line of Credit Balance | 7,023,924 | 7,095,577 | 7,353,744 | 8,484,528 | 8,085,528 | 8,068,747 | 7,973,147 | 7,865,597 | 7,617,382 | 7,170,956 |
| Draw (Repayment) | 71,653 | 258,167 | 1,130,784 | (399,000) | (16,781) | (95,600) | (107,550) | (248,215) | (446,426) | (243,215) |
| **Ending Revolver Balance** | **7,095,577** | **7,353,744** | **8,484,528** | **8,085,528** | **8,068,747** | **7,973,147** | **7,865,597** | **7,617,382** | **7,170,956** | **6,927,741** |
| Availability | (1,396,374) | (1,582,779) | (2,527,600) | | | | | | | |
| Maximum Revolver Size | 5,699,203 | 5,770,965 | 5,956,928 | | | | | | | |
| **Liquidity (Ending Cash+Availability)** | **(1,396,374)** | **(1,582,779)** | **(2,527,600)** | | | | | | | |
| Projected DIP Interest (L+5.0%; LIBOR = 1.5%) | - | - | - | - | - | - | 677 | - | - | - |
| Projected DIP ULF (TBD) | - | - | - | - | - | - | 2,734 | - | - | - |
| Other Fees | - | - | - | - | - | - | 1,500 | - | - | - |
| **DIP Cash Interest and Fees** | **-** | **-** | **-** | **-** | **-** | **-** | **4,911** | **-** | **-** | **-** |
| Projected CoBank Interest | - | - | 106,017 | - | - | - | 106,678 | - | - | - |
| Projected Line of Credit ULF (0.25%) | - | - | 78 | - | - | - | - | - | - | - |
| Other Fees | - | - | 1,500 | - | - | - | 1,500 | - | - | - |
| **CoBank Cash Interest and Fees** | **-** | **-** | **107,595** | **-** | **-** | **-** | **108,178** | **-** | **-** | **-** |
| **Bank Term Loan** | | | | | | | | | | |
| Beginning Term Loan Balance | 13,805,000 | 13,805,000 | 13,805,000 | 13,740,000 | 13,740,000 | 13,740,000 | 13,740,000 | 13,675,000 | 13,675,000 | 13,675,000 |
| Amortization (Repayment) | - | - | (65,000) | - | - | - | (65,000) | - | - | - |
| **Ending Term Loan Balance** | **13,805,000** | **13,805,000** | **13,740,000** | **13,740,000** | **13,740,000** | **13,740,000** | **13,675,000** | **13,675,000** | **13,675,000** | **13,675,000** |

| *week ending Sunday* | *Forecast* 10 Week Ending 11/19/2017 | *Forecast* 11 Week Ending 11/26/2017 | *Forecast* 12 Week Ending 12/3/2017 | *Forecast* 13 Week Ending 12/10/2017 | *Forecast* 14 Week Ending 12/17/2017 | *Forecast* 15 Week Ending 12/24/2017 | *Forecast* 16 Week Ending 12/31/2017 | *Forecast* 17 Week Ending 1/7/2018 | *Forecast* 18 Week Ending 1/14/2018 | *Forecast* 19 Week Ending 1/21/2018 | 19 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Borrowing Base** | | | | | | | | | | | |
| **Borrowing Base Calculation (All Collateral)** | | | | | | | | | | | |
| Accounts Receivable | 3,275,551 | 3,307,371 | 3,226,728 | 3,361,907 | 3,466,002 | 3,591,551 | 3,847,115 | 3,835,928 | 3,871,821 | 3,944,751 | |
| Less: Ineligibles | (835,266) | (843,380) | (822,816) | (798,453) | (823,175) | (790,141) | (846,365) | (843,904) | (851,801) | (867,845) | |
| Eligible Accounts Receivable | 2,440,286 | 2,463,991 | 2,403,912 | 2,563,454 | 2,642,827 | 2,801,410 | 3,000,750 | 2,992,024 | 3,020,020 | 3,076,906 | |
| Advance Rate | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | |
| **Net BB from Accounts Receivable** | **2,074,243** | **2,094,393** | **2,043,325** | **2,178,936** | **2,246,403** | **2,381,198** | **2,550,638** | **2,543,220** | **2,567,017** | **2,615,370** | |
| Inventory (Frozen) | 7,083,109 | 6,915,439 | 6,803,659 | 6,654,619 | 6,486,949 | 6,375,169 | 6,226,129 | 6,114,349 | 5,983,939 | 5,850,734 | |
| Inventory (Finished Goods) | 4,064,454 | 4,127,971 | 4,044,139 | 4,026,124 | 4,028,907 | 3,878,269 | 3,786,767 | 3,786,767 | 3,786,767 | 261,405 | |
| Less: Ineligibles | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | |
| Eligible Inventory | 11,197,563 | 11,093,409 | 10,897,797 | 10,730,742 | 10,565,856 | 10,303,437 | 10,062,895 | 9,951,115 | 9,820,705 | 6,162,140 | |
| Advance Rate | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% | 65.0% | |
| **Net BB from Inventory** | **7,278,416** | **7,210,716** | **7,083,568** | **6,974,982** | **6,867,806** | **6,697,234** | **6,540,882** | **6,468,225** | **6,383,458** | **4,005,391** | |
| Facility Limit | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | |
| Total Borrowing Base, before Reserves | 9,352,659 | 9,305,109 | 9,126,894 | 9,153,918 | 9,114,209 | 9,078,432 | 9,091,519 | 9,011,445 | 8,950,476 | 6,620,761 | |
| Reserves / Other Adjustments | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | |
| **Total Borrowing Base, net of Reserves** | **8,952,659** | **8,905,109** | **8,726,894** | **8,753,918** | **8,714,209** | **8,678,432** | **8,691,519** | **8,611,445** | **8,550,476** | **6,220,761** | |
| **Debt Schedules** | | | | | | | | | | | |
| **Debtor-in-Possession Financing** | | | | | | | | | | | |
| Beginning DIP Balance | 4,768,890 | 5,305,215 | 5,882,447 | 6,401,388 | 6,711,610 | 7,129,139 | 7,675,397 | 8,351,881 | 8,657,857 | 9,027,160 | |
| (Repayment) | - | - | - | - | - | - | - | - | - | (1,087,272) | |
| Draw | 536,325 | 577,232 | 518,941 | 310,222 | 417,529 | 546,258 | 676,483 | 305,976 | 369,303 | 606,792 | |
| **Ending DIP Balance** | **5,305,215** | **5,882,447** | **6,401,388** | **6,711,610** | **7,129,139** | **7,675,397** | **8,351,881** | **8,657,857** | **9,027,160** | **8,546,680** | |
| DIP Availability (less LoC balance) | (2,880,185) | (3,081,492) | (3,258,836) | (3,192,446) | (3,233,197) | (3,429,794) | (3,784,990) | (3,754,553) | (3,747,869) | (2,325,919) | |
| DIP Facility Limit | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | 13,250,000 | |
| **Total Liquidity (Ending Cash+Availability DIP & LoC)** | **(2,880,185)** | **(3,081,492)** | **(3,258,836)** | **(3,192,446)** | **(3,233,197)** | **(3,429,794)** | **(3,784,990)** | **(3,754,553)** | **(3,747,869)** | **(2,325,919)** | |
| **Bank Line of Credit** | | | | | | | | | | | |
| Beginning Line of Credit Balance | 6,927,741 | 6,527,629 | 6,104,154 | 5,584,341 | 5,234,754 | 4,818,266 | 4,432,829 | 4,124,629 | 3,708,141 | 3,271,184 | |
| Draw (Repayment) | (400,113) | (423,475) | (519,813) | (349,588) | (416,488) | (385,438) | (308,200) | (416,488) | (436,957) | (3,271,184) | |
| **Ending Revolver Balance** | **6,527,629** | **6,104,154** | **5,584,341** | **5,234,754** | **4,818,266** | **4,432,829** | **4,124,629** | **3,708,141** | **3,271,184** | **-** | |
| Availability | | | | | | | | | | | |
| Maximum Revolver Size | | | | | | | | | | | |
| **Liquidity (Ending Cash+Availability)** | | | | | | | | | | | |
| Projected DIP Interest (L+5.0%; LIBOR = 1.5%) | - | 10,679 | - | - | - | 26,970 | - | - | - | 40,602 | |
| Projected DIP ULF (TBD) | - | 2,363 | - | - | - | 1,723 | - | - | - | 1,249 | |
| Other Fees | - | 1,500 | - | - | - | 1,500 | - | - | - | 1,500 | |
| **DIP Cash Interest and Fees** | **-** | **14,542** | **-** | **-** | **-** | **30,193** | **-** | **-** | **-** | **43,351** | |
| Projected CoBank Interest | - | 111,669 | - | - | - | 100,903 | - | - | - | 93,774 | |
| Projected Line of Credit ULF (0.25%) | - | - | - | - | - | 141 | - | - | - | 480 | |
| Other Fees | - | 1,500 | - | - | - | 1,500 | - | - | - | 1,500 | |
| **CoBank Cash Interest and Fees** | **-** | **113,169** | **-** | **-** | **-** | **102,545** | **-** | **-** | **-** | **95,754** | |
| **Bank Term Loan** | | | | | | | | | | | |
| Beginning Term Loan Balance | 13,675,000 | 13,675,000 | 13,610,000 | 13,610,000 | 13,610,000 | 13,610,000 | 13,545,000 | 13,545,000 | 13,545,000 | 13,545,000 | |
| Amortization (Repayment) | - | (65,000) | - | - | - | (65,000) | - | - | - | (65,000) | |
| **Ending Term Loan Balance** | **13,675,000** | **13,610,000** | **13,610,000** | **13,610,000** | **13,610,000** | **13,545,000** | **13,545,000** | **13,545,000** | **13,545,000** | **13,480,000** | |