**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| In Re:<br><br>Cranberry Growers Cooperative d/b/a CranGrow,<br><br>Debtor. | Case No.: 17-13318-CJF<br><br>Chapter 11 |

**NOTICE OF HEARING AND MAXWELL FOOD'S MOTION FOR ORDER AUTHORIZING RECOUPMENT**

To:   The Debtor and the entities specified on the attached Service List

1.   Maxwell Foods, by and through its undersigned counsel, moves the Court for the relief requested below.

2.   The Court will hold a hearing on this matter on February 20, 2018 at 11:15 a.m. before the Honorable Catherine J. Furay. The hearing shall be telephonic. The Court Conference Line is (877) 336-1828. The Access Code is 8588228##.

3.   Maxwell Foods seeks an order authorizing it to recoup amounts owed to it by the Debtor against pre-petition and post-petition amounts owed by Maxwell Foods to the Debtor, payment of which has been demanded by Debtor, and granting such other and further relief as the court may deem appropriate.

4.   This Motion also serves as Maxwell Foods' timely assertion of its right of recoupment prior to the Effective Date as required by Paragraph 10.6 of Debtor's Chapter 11 Plan of Reorganization (Dated December 19, 2017) [ECF # 149].

**JURISDICTION**

5.   This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## MAXWELL FOODS' TRANSACTION AND RELATIONSHIP WITH DEBTOR

6. On 4 February 2017, Maxwell Foods entered into a supply agency agreement (hereinafter the "Agreement") with Cranberry Growers Cooperative d/b/a CranGrow (hereinafter "CranGrow" or the "Debtor") for Maxwell Foods to purchase dried cranberries from CranGrow.

7. The Agreement was memorialized in the email correspondence between Paul Walsh of Maxwell Foods and Tim Feit, director of sales at CranGrow.

8. The Agreement provided in relevant part that "In order to continue the agreement for 2018, we will require the purchase of 7 full container loads in 2017 and to be current on payments."

9. Maxwell Foods purchased the required 7 full container loads in 2017. CranGrow provided the 7 full container loads in 2017..

10. Before making additional purchase orders to be supplied in 2018, Maxwell Foods planned to send Paul Walsh on a site inspection to CranGrow. Approximately four days prior to this planned visit, after Walsh had already traveled from Australia to the United States, CranGrow informed Walsh not to visit because CranGrow had nothing to sell Maxwell Foods.

11. Walsh was informed that CranGrow was filing for Bankruptcy.

12. CranGrow then reached out Maxwell Foods assuring them, contrary to their previous statements, that they did in fact have the inventory necessary to fulfill the Supply Agency Agreement.

13. Subsequently, Walsh did visit CranGrow and inspected their stock, which on information and belief was sufficient to satisfy the needs of Maxwell Foods. Feit assured Walsh that their were approximately thirteen loads available for purchase and that "Graceland" would not be taking anything from the CranGrow cartons.

14. On information and belief, Graceland is the entity with whom CranGrow entered a pre-petition agreement for the purchase of all or substantially all of CranGrow and its operations.

15. Based on the assurances received from Feit, Maxwell Foods put in a blanket Purchase Order for 10 full container loads of dried cranberries to be delivered by CranGrow in 2018 at an agreed upon price of $1.05 per pound.

16. After receiving the blanket Purchase Order for 10 full container loads of dried cranberries to be delivered by CranGrow, CranGrow informed Maxwell Foods that they would be unable to fulfill this order resulting in a breach of the Supply Agency Agreement. On information and belief, CranGrow was unable to fulfill the order, despite having the necessary inventory, because of the deal it had made with Graceland.

17. Maxwell Foods was left with a gap in their supply chain which threatened their business. The threat forced Maxwell Foods to replace CranGrow with a new dried cranberry supplier. To meet the immediate needs of the business, Maxwell Foods entered into an agreement with Badger State Fruit Processing for ten orders of dried cranberries at a price of $1.29 per pound for 3 loads and $1.34 per pound for the remaining 7 loads.

18. Maxwell Foods was forced to pay $110,100 more than the price agreed to with CranGrow under the Supply AgencyAgreement.

19. Maxwell foods brings this motion seeking an order authorizing recoupment of or in the alternative granting relief from the automatic stay to exercise rights of setoff in respect to the $96,871.98 loss Maxwell Foods suffered as a result of CranGrow's actions.

**PRE-PETITION AND POST PETITION CLAIMS AND OBLIGATIONS OF MAXWELL FOODS AND CRANGROW**

20. As of January 12, 2018 Maxwell Foods owed CranGrow for partial performance of the Supply Agency Agreement, for the already delivered dried cranberries. As of January 12,

3

2018 CranGrow owed Maxwell Foods $96,871.98 on account of the loss suffered by Maxwell Foods due to CranGrow's breach of the Supply Agency Agreement.

|  | Pre-Petition | Post-Petition | TOTAL |
|---|---|---|---|
| **Maxwell Foods obligations to CranGrow** | $128,475 | $0 | $128,475 |
| **CranGrow obligations to Maxwell Foods** | $0 | $110,100 | $110,100 |
| **Maxwell net Obligations to CranGrow** | $128,475 | $(110,100) | $18,375 |

## ARGUMENT

21. Maxwell Foods respectfully submits this Memorandum of Law (the "Memorandum") in support of its Motion (the "Motion") for entry of an order granting Maxwell Foods (i) authorization to recoup immediately amounts owed to it by CranGrow Growers Cooperative d/b/a CranGrow (" CranGrow" or the "Debtor") from amounts owed to CranGrow by Maxwell and (ii) if such authorization is not granted in full, relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code to set off pre-petition amounts owing between Maxwell and CranGrow.

**I. MAXWELL FOODS HAS A VALID RIGHT TO RECOUP THE ACCOUNTS RECEIVABLE OWED TO IT BY CranGrow FROM THE PRE-PREPETITION AND POST-PETITION ACCOUNTS PAYABLE IT OWES TO CranGrow**

**A. The Doctrine of Recoupment in Bankruptcy is designed to protect parties like Maxwell Foods.**

21.    Although exercise of the right of recoupment is not subject to the automatic stay in effect with respect to the Debtor under § 362 of the Bankruptcy Code, Maxwell has not exercised any right of recoupment.

22.    Recoupment allows a defendant to defend a claim made against it by asserting a countervailing claim arising out of the same transaction or occurrence. *Beeche Sys. Corp. v. D.A. Elia Constr. Corp. (In re Beeche Sys. Corp.)*, 164 B.R. 12, 18 (Bankr. N.D.N.Y. 1994). Although the right of recoupment does not appear anywhere in the Code, it is an equitable remedy that has long been recognized and allowed in the bankruptcy context. *In re Eyke*, 246 B.R. 550, 557 (Bankr. W.D. Mich. 2000). Because the Code does not create any substantive right of recoupment, courts must look to non-bankruptcy law, which ordinarily is state law, to determine whether the right of recoupment may be exercised and if so, to what extent. See *New York State Electric & Gas Co. v. McMahon (In re McMahon)*, 129 F.3d 93, 96 (2d Cir. 1997); *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 146 (2d Cir. 2002).

23.    Recoupment is viewed as a defense to payment of a claim, a mechanism for determining the proper amount owed to a debtor, rather than affirmative assertion of a claim against the debtor. See Collier on Bankruptcy ¶553.10 (Resnick, Sommer and King, eds., 15th ed, Vol. 5, 2005).

24.    As such, the funds found to be subject to recoupment are not considered to be part of the property of the debtor, and recoupment is not subject to the automatic stay. *In re McMahon*, 129 F.3d at 96; *Newberry v. Fireman's Fund Ins. Co.*, 95 F.3d 1399, 1403 (9th Cir. 1996); *MBNA Am. Bank, N.A. v. TransWorld Airlines, Inc.* (In re TransWorld Airlines), 275 B.R.

5

712, 720 (Bankr. D. Del. 2002). Because recoupment is a defensive remedy, it is limited by the amount of the debtor's claim.

25. The common law doctrine of recoupment provides an exception to set off in bankruptcy cases. *In re University Medical Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992). It is not subject to the limitations on set off contained in § 553 of the Code. *In re University Medical Ctr.*, 973 F.2d. at 1080. As a result, recoupment has been allowed in a variety of situations without regard to whether the debts involved arose pre-petition or post-petition. See *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155 (10th Cir. 1986) (allowing creditor to recoup overpayments made pre-petition pursuant to an oil division order, by withholding money owed for purchases made post-petition.); *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (M.D. Tenn. 1981) (allowing record company to recoup the advances paid to a musician from post-petition record sales); *In re Norsal Indus., Inc.*, 147 B.R. 85 (Bankr. E.D.N.Y. 1992) (allowing electric utility to recoup the debtor's pre-petition security deposit to reduce its claim against the debtor for post-petition electrical services); *In re Vaughter*, 109 B.R. 229 (Bankr. W.D. Tex. 1989) (allowing employer to recoup pre-petition advances paid to the debtor against post-petition commissions); *Schacter v. Tolassi (In re 105 E. Second St. Assoc.)*, 207 B.R. 64, 68 (Bankr. S.D.N.Y. 1977) (allowing creditor to recoup pre-petition rent overcharge award against post-petition rents).

26. Maxwell Foods has the right to recoup the amount owed to it from the accounts payable it owes to CranGrow, whether pre-petition or post-petition.

**B. Wisconsin state law gives Maxwell Foods a right to recoupment.**

27. Under Wisconsin law, "Recoupment is an equitable defense which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff which arose out of the same transaction." *Brown v. Gen. Motors Corp.*, 152 B.R. 935, 938 (W.D. Wis. 1993). A right of recoupment is exercisable if the obligations at issue are not divisible and are the

6

result of a single transaction. *Id* at 938. Where it appears that the obligations of the transaction would not have been entered into except upon the clear understanding that the full object of the transaction will be performed, the transaction is not divisible and a party may exercise a right of recoupment arising out to that transaction. *Id* at 938. Therefore, under Wisconsin law, if the claims at issue have arisen out of the same transaction, as determined by the parties' intent and the object of the transaction, recoupment is available as a defense to the plaintiff's claims.

28.    After examining applicable state law to determine whether such law recognizes the right of recoupment, courts in the Seventh Circuit then have applied bankruptcy law to determine whether a particular creditor is entitled to exercise the right in bankruptcy. *In re Eckerstorfer, 508 B.R. 90, 96 (Bankr. E.D. Wis. 2014).* Courts in the Seventh Circuit have generally applied the "single integrated transaction" test, requiring that the debts involved arise out of a single integrated transaction such that it would be inequitable to allow the debtor to enjoy the benefits of a transaction without also fulfilling its obligations. *In re Health Mgmt. Ltd. P'ship*, 336 B.R. 392, 396 (Bankr. C.D. Ill. 2005); and *see In re CDM Mgmt. Servs., Inc.*, 226 B.R. 195, 197 (Bankr. S.D. Ind. 1997).

**C. The debts at issue here are the result of a single integrated transaction.**

29.    There is no precise definition of a "single integrated transaction," and determination of whether the test is met is fact specific. In this case the test is met. The purpose of the Supply Agency Agreement and corresponding emails referenced in the Motion, was to form a relationship between CranGrow and Maxwell whereby CranGrow would provide dried cranberries to Maxwell in exchange for cash. At the time an agreement was formed between the parties, both acknowledge the continuing obligations to which they were agreeing, such acknowledgement is evidence of a single continuing transaction.

7

30. The fact that some of the debts at issue governed by different terms does not bar a finding that the contracts are part of a single integrated transaction. See *Fisher v. Outlet Co. (In re Denby Stores, Inc.)*, 86 B.R. 768, 783 n.18 (Bankr. S.D.N.Y. 1988) (indicating in dictum that obligations arising under various documents executed appurtenant to a sale transaction may constitute a single integrated transaction). The continuing relationship of the parties is dependent on the Supply Agency Agreement and the transactions would not have continued but for this agreement.

31. Courts in other jurisdictions have found that obligations arising under different contracts can be part of a single integrated transaction where, for example, the purpose of the documents was to facilitate the purpose of the overall transaction. See *Warren Oil v. Conoco*, No. 89-799-A, 1990 U.S. Dist. LEXIS 20017, at *5 (S.D. Iowa June 27, 1990) (finding that the multiple agreements could not be rationally and realistically severed and were thus part of the same transaction*)*; *In re Silicon Valley Telecom Exch., LLC*, 284 B.R. at 709 (stating that "the two obligations still might be logically related to each other despite having originated from separate contracts, if, for example, [one agreement] was made for the purpose of permitting Debtor to meet Debtor's obligations under the [other agreement]"); *Sigman v. Aetna Life Ins. Co. (In re Sigman)*, 270 B.R. 858, 862 (Bankr. S.D. Ohio 2001) (finding that although the obligations at issue arose under two separate documents, the obligations were dependant on each other, and therefore part of a single transaction); *In re Eyke*, 246 B.R at 558 (holding that because the agreements at issue were "necessarily intertwined," they constituted a single integrated transaction for recoupment purposes). The separate contracts involved in Eyke were executed in connection with an asset sale transaction, similar to the Supply Agency Agreement at issue here. 246 B.R. at 558. Thus the debts at issue here are a result of a single integrated transaction.

**D. It would be inequitable to bar Maxwell Foods from asserting a recoupment defense.**

32.     Because the obligations at issue arose in such a closely integrated transaction, it would be inequitable to allow CranGrow to enjoy the favorable aspects of the Transaction while avoiding the unfavorable aspects of the same Transaction. See *In re Reeves*, 265 B.R. 766, 772 (Bankr. N.D. Ohio 2001) (stating that the application of the doctrine of recoupment prevents the debtor from assuming the favorable aspects of a transaction while avoiding the unfavorable aspects of the same transaction, and that, as such, it is consistent with the bankruptcy policy of requiring an executory contract to be either assumed or rejected as a whole).

33.     Due to CranGrow's failure to deliver dried cranberries to Maxwell Foods, Maxwell Foods was forced to seek a new supplier for cranberries or suffer substantial harm to their business. Maxwell Foods was unable to find a cranberry supplier on short notice which could supply the same quality of cranberries at the same price. Thus due to CranGrow's breach of the Supply Agency Agreement Maxwell Foods was suffered an economic loss equal to the difference between the price paid for cranberries from CranGrow and the price from the new supplier, Badger State Fruit Processing. To deny recoupment would allow CranGrow to profit off their breach of the Supply Agency Agreement. Therefore, Maxwell Foods should be allowed to recoup the obligations owed to it by CranGrow under the Supply Agency Agreement.

**E.  It is Appropriate for Maxwell to Exercise its Right of Recoupment at this Time.**

34.     CranGrow demanded payment of the accounts payable owed by Maxwell by a letter on January 19, 2018. The time is now ripe for Maxwell Foods to defend against such demand by recouping the amounts owed to it from the amount claimed by CranGrow.

9

**II. MAXWELL HAS RIGHTS OF SETOFF, IS A SECURED CREDITOR BECAUSE OF SUCH RIGHTS AND IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY**

35.     For the reasons set forth above, Maxwell Foods believes it is entitled to recoupment in this case. However, in the event the Court does not authorize Maxwell Foods to exercise recoupment to the full extent requested in the Motion, Maxwell Foods has rights of setoff with respect to the pre-petition obligations owed by each party to the other, and is entitled to relief from the automatic stay to exercise those rights.

36.     In accordance with applicable law and § 553 of the Bankruptcy Code, subject to the automatic stay Maxwell Foods also has a right to offset its pre-petition payables against allowable pre-petition claims. Pursuant to § 506(a) of the Bankruptcy Code, the pre-petition claims of Maxwell Foods against CranGrow are secured by the pre-petition accounts payable owed by Maxwell Foods. If Maxwell Foods' rights of recoupment are not recognized by the Court, Maxwell Foods seeks relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code to offset the pre-petition obligations owing between the parties.

**A. The Doctrine of Setoff.**

37.     Section 553 of the Bankruptcy Code governs setoffs in a bankruptcy context. In relevant part § 553 provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement date ... against a claim of such creditor against the debtor that arose before the commencement date of the case...

11 U.S.C. § 553(a). Essentially the right of setoff allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B

when B owes A'... Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. §553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995).

**B. Maxwell Foods has a Right of Setoff Under Applicable Non-Bankruptcy Law.**

38.   To determine whether a right of setoff exists, the courts must look to applicable state law. The transaction here will be governed by Wisconsin state law.

39.   The right of setoff is a common law equitable right under Wisconsin law and has been codified in Wis. Stat. § 802.07. *In re Express Freight Lines, Inc.,* 130 B.R. 288, 290 (Bankr. E.D. Wis. 1991). The right of setoff under Wisconsin law was originally a creation of statute, *Fuhrmann v. Seybold (In re Seybold's Estate),* 223 Wis. 192, 270 N.W.87, 89 (1936), but the Wisconsin Supreme Court has long recognized a right to equitable setoff, see *Jones v. Piening*, 85 Wis. 264, 55 N.W. 413, 415 (1893); *Piotrowski v. Czerwinski*, 138 Wis. 396, 120 N.W. 268, 269 (1909); *Nat'l Warehouse Corp. v. Banking Comm'n (In re Milwaukee Commercial Bank)*, 236 Wis. 105, 294 N.W.538, 540 (1940). *In re Eckerstorfer*, 508 B.R. 90, 96 (Bankr. E.D. Wis. 2014).

40.   Under Wisconsin law, "Equitable setoff is proper only where "mutual demands exist, where insolvency has intervened even though one of the demands has not yet matured, and where no equities of other claimants are shown to exist'. . . Setoff, therefore, requires that the claimant and the debtor have mutual debts." *In re Eckerstorfer*, 508 B.R. 90, 96 (Bankr. E.D. Wis. 2014); citing: *Nat'l Warehouse Corp. v. Banking Comm'n (In re Milwaukee Commercial Bank)*, 236 Wis. 105, 294 N.W.538, 540 (1940). The court in *Eckerstorfer* noted the "doctrine of setoff "is grounded on the absurdity of making A pay B when B owes A"' *Id* at 96; citing *Studley v. Boylston Nat'l Bank of Boston*, 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313 (1913). "Bankruptcy courts have found that the right of setoff exists under Wisconsin law and have

11

applied it in the context of Bankruptcy Code § 553. *In re Eckerstorfer*, 508 B.R. 90, 96 (Bankr. E.D. Wis. 2014).

41. In order for a creditor to be allowed to exercise its state law right of setoff in bankruptcy, it must establish the following:

> (1) A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the case;
> (2) The creditor has a claim against the debtor that arose prior to the commencement of the bankruptcy case; and
> (3) The debt and the claim are mutual obligations.

*United States v. Gerth*, 991 F.2d 1428, 1431 (8th Cir. 1993); *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1035 (5th Cir. 1987); *In re Nickerson & Nickerson*, Inc., 62 B.R. 83, 85 (Bankr. D. Neb. 1986). Debts are mutual when the obligations are in the same right and are between the same parties, standing in the same capacity. *Scherling v. Hellman Elec. Corp., (In re Westchester Structures, Inc.)*, 181 B.R. 730, 738-39 (Bankr. S.D.N.Y. 1995). While "mutuality" is not defined in the Bankruptcy Code, courts have interpreted it to mean debts which are owed between the same parties, acting in the same capacity. See *id*. (stating that "[d]ebts are mutual when the debts and credits are in the same right and are between the same parties, standing in the same capacity.").

42. The requirements for a valid right of setoff are present here. Both sets of obligations arose prior to the commencement of these bankruptcy cases. The mutuality requirement is met because (1) the debts are held exclusively between Maxwell Foods and CranGrow and (2) the debts and credits are held in the same "capacity" because neither Maxwell Foods nor CranGrow was acting in a fiduciary capacity or as a trustee. Further Maxwell Foods is not aware of any material dispute as to the pre-petition amounts due and owing between the parties as set forth in the Motion.

Main Document    Page 13 of 15

43. Pursuant to the provisions of § 506(a) of the Bankruptcy Code, Maxwell Foods' claim against CranGrow for the pre-petition receivables is a secured claim to the extent of the right of setoff. *In re Eckerstorfer*, 508 B.R. 90, 96 (Bankr. E.D. Wis. 2014); *Bank of N.Y v. Treco (In re Treco)*, 240 F.3d 148, 162 (2d. Cir. 2001).

**C. Maxwell Foods is Entitled to Relief from the Automatic Stay to Exercise its Rights of Setoff.**

44. While § 553(a) preserves a creditor's right of setoff, exercise of such rights after a bankruptcy petition is filed is barred by the automatic stay, unlike a creditor's rights of recoupment. Section 362(a)(7) of the Bankruptcy Code provides that the filing of a debtors' voluntary petition operates as an automatic stay, applicable to all parties, against "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). However, § 362(a)(7) simply stays enforcement of a creditor's setoff rights, and the creditor may still exercise its right of setoff in a bankruptcy proceeding if it obtains relief from the automatic stay or obtains an order allowing setoff prior to exercising any right to set off.

45. As stated previously, Maxwell Foods has not exercised any rights of either setoff or recoupment. Section 362(d) of the Bankruptcy Code provides that relief from automatic stay shall be granted:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
> (2) with respect to a stay of an act against property under subsection (a) of this section, if-
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization; ...

11 U.S.C. § 362(d). Maxwell Foods should be granted relief from stay because (1) it has demonstrated that "cause" exists, and (2) the property is not necessary to an effective reorganization in this case. Allowance or disallowance of a setoff is a decision that is within the

13

discretion of the bankruptcy court. *Bohack Corp. v. Borden, Inc. (In re Bohack Corp.)*, 599 F.2d 1160, 1165 (2d Cir. 1979). Courts have stated that setoff should be allowed absent compelling circumstances and that "set off should be enforced unless the court finds after due reflection that allowance would not be consistent with the provisions and purposes of the Bankruptcy Act as a whole." *Id*. Therefore, absent compelling circumstances, once a party establishes a right to set off, such party also demonstrates "cause" for lifting the automatic stay. *In re Alibrandi*, No. 87-00384, 1990 Bankr. LEXIS 1002, at *8 (Bankr N.D.N.Y. Apr. 25, 1990). In other jurisdictions the demonstration of a right of setoff has been found to make "a prima facie showing of 'cause' for relief from stay." See *United States v. Orlinski (In re Orlinski)*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991); *In Re Flanagan Bros., Inc.*, 47 B.R. 299, 303 (Bankr. D. N.J. 1985). Maxwell Foods has established that it has a right of setoff, and accordingly, "cause" exists for granting the relief from the stay sought by Maxwell.

46.    The amount that Maxwell seeks to offset is small in the context of the Debtor's case and the overall cash resources of the Debtor. Because of Maxwell Foods' rights to setoff the pre-petition accounts payable against the pre-petition receivables, CranGrow has de minimus equity in those payables. Additionally, these obligations represent a relatively small amount in comparison to the overall assets of the Debtors, so that allowing the setoff will not adversely affect the Debtor's ability to reorganize. Accordingly, Maxwell is also entitled to relief under § 362(d)(2).

## **CONCLUSION**

47.    Maxwell has a valid right to recoup the amounts owed to it by CranGrow from the accounts payable which Maxwell owes to CranGrow. Although the exercise of recoupment is not subject to the automatic stay, Maxwell seeks authorization by the Court of exercise of such recoupment first to make sure the Court does not disagree with Maxwell's interpretation of the

factual premises for Maxwell's conclusion that recoupment may be exercised, and second because of uncertainty over whether the Final DIP Financing Order requires approval of the Court for any recoupment. If the Court approves less than the full recoupment requested by Maxwell, Maxwell seeks an order granting relief from the automatic stay to exercise the rights of setoff preserved by § 553(a) of the Bankruptcy Code, first for cause under § 362(d)(1), and second, under § 362(d)(2), because CranGrow has no equity in the accounts payable to be offset, and such payables are not necessary to an effective reorganization of the Debtors.

48. Accordingly, Maxwell requests the Court to enter an order granting the relief requested in the Motion and such other and further relief as is just.

Dated: January 31, 2018.   **FOLEY & MANSFIELD, PLLP**

BY: /s/ Thomas J. Lallier
Thomas J. Lallier (#163041)
tlallier@foleymansfield.com
250 Marquette Avenue, Suite 1200
Minneapolis, MN  55401
Telephone:  (612) 338-8788

ATTORNEYS FOR MAXWELL FOODS